In re OMEGA TRUST, Debtor.

In re FEMMAR FOUNDATION, Debtor.

In re GEOMER CORPORATION, Debtor.

In re CADREST (DALLAS) INC., Debtor.

In re CADILLAC RESTAURANTS INC., Debtor.

In re CADREST (HOUSTON) INC., Debtor.

In re NEUTER LIMITED, Debtor.

In re GNS CORP. d/b/a Genius Corporation, Debtor.

In re CADILLAC BAR INC., Debtor.

In re MONCAR INVESTMENTS INC., Debtor.

In re CADREST (NEW YORK) INC., Debtor.

In re Kenneth NEWMAN, Debtor.

Bankruptcy Nos. 89 B 11741(CB)–89 B 11752(CB).

United States Bankruptcy Court, S.D. New York.

Feb. 5, 1990.

As Amended Feb. 9 and Feb. 28, 1990.

666

Edward Kanbar, New York City, for debtors and petitioning creditor Fanny Newman.

Patterson, Belknap, Webb & Tyler, New York City (David W. Dykhouse and Scott Horton, of counsel), for Omega Trust, et al., alleged debtors.

## Facts

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

Upon the Motion of Omega Trust, Geomer Corporation, Cadrest (Dallas) Inc., Cadillac Restaurants Inc., Cadrest (Houston) Inc., Neuter Limited, GNS Corp. (doing business as Genius Corporation), Cadillac Bar Inc., Moncar Investments Inc. and Cadrest (New York) Inc. (the "Entities") for an award of sanctions pursuant to Bankruptcy rule 9011 and 28 U.S.C. § 1927; and after a hearing of this Court held on August 9, 1989 at which the Entities appeared by their attorneys, Patterson, Belknap, Webb & Tyler (David W. Dykhouse and Scott Horton appearing) and were opposed by Edward S. Kanbar on behalf of himself and Mrs. Fanny Sara Newman; and after a further hearing of this Court held on August 17, 1989, at which the same parties appeared, counsel were heard, documentary evidence was received, and testimony was taken; and after a further hearing of this Court held on September 28, 1989, at which the same parties appeared, counsel were heard, documentary evidence was received, and testimony was taken; and upon the memoranda of law, affidavits and other submissions of counsel for the Entities and of Mr. Kanbar, the Court now finds as follows:

### Background Facts

Omega Trust (the "Trust") is a trust organized under the laws of the Cayman Islands. Mr. Kenneth Newman is the settlor of the Trust.

The Trust was established by Mr. Newman in 1981 for the benefit of his wife Fanny Sara Newman, Mrs. Newman's parents, and Mr. Newman's children. The Trust was created to preserve Mr. Newman's estate for ultimate distribution to the beneficiaries and not for any business purpose. The beneficiaries of the Trust cannot assign or transfer the assets of the Trust, and the Trust has not issued any stock or other transferable instrument.

The Trust owns all of the outstanding stock of Neuter Limited ("Neuter"), a Cayman Islands corporation, and holds that stock outside of the United States. Neuter owns all of the stock of Cadillac Restaurants Inc. ("CRI"), a Delaware corporation.

CRI owns all of the outstanding stock of Moncar Investments, Inc. ("Moncar"), Cadrest (Houston) Inc. ("Cadrest Houston"), Cadrest (Dallas) Inc. ("Cadrest Dallas") and Cadrest (New York) Inc. ("Cadrest New York"), all Delaware corporations.

Moncar owns the outstanding stock of Geomer Corporation ("Geomer") and Genius Corporation ("Genius"). Moncar also owns 49% of the stock of Cadillac Bar Inc. ("Cadillac Bar"), a Texas corporation.

Mr. Newman is managing director and a member of the board of directors of Neuter and is the chairman of the board of directors of CRI, Moncar, Cadrest Houston, Cadrest Dallas, Cadrest New York, Geomer and Genius.

### Australian Proceedings

Mr. and Mrs. Newman are citizens of Australia. Since January 1988, divorce and property settlement proceedings between them have been pending in the Family Court of Australia at Parramatta (the "Australian Court").

On September 1, 1989, the Australian Court issued its judgment, dissolving the interim maintenance awards for the benefit of Mrs. Newman and finding that the Entities did not constitute a part of the matrimonial estate.

### New York Family Court Proceedings

On July 26, 1989, Mrs. Newman sought an ex parte temporary order of protection from the Family Court of New York. That Court signed an order which prohibited Mr. Newman from using a cooperative apartment at 480 Park Avenue which belonged to Moncar. Mrs. Newman obtained this order by representing to the Family Court that she owned the apartment and had been its sole occupant for a number of years.

On July 31, 1989, following an evidentiary hearing, the Family Court revoked the temporary order of protection.

### Removal to the District Court

On the same date, Mr. Kanbar attempted to remove the Family Court proceeding to the United States District Court for the Southern District of New York. The matter was docketed as civil action no. 89 Civ. 5163 and assigned to Honorable Robert J. Ward, U.S.D.J.

At the hearing before Judge Ward on August 3, 1989, Mr. Kanbar withdrew his removal after being apprised by the Court that he would incur sanctions under Rule 11 of the Federal Rules of Civil Procedure unless he did so.

### The Petitions

On July 17, 1989, Mrs. Newman filed ostensibly "voluntary" petitions with respect to each of the Entities (the "Petitions") pursuant to Chapter 7 of the Bankruptcy Code.

In each of the Petitions, Mrs. Newman described herself as "the beneficial owner of the corporation named as petitioner" and declared "under penalty of perjury" that "the filing of this petition on behalf of the corporation has been authorized."

None of the Petitions was accompanied at the time of its filing by a corporate resolution or other appropriate authorization, duly attested to, authorizing the filing of a voluntary petition, as required by Southern District of New York Local Bankruptcy Rule 51.

Exhibit B to each of the Petitions was signed by Mr. Kanbar, Mrs. Newman's attorney. Mr. Kanbar signed as "Attorney for Petitioner."

On July 18, 1989 Mrs. Newman filed an involuntary petition against Kenneth Newman.

### Authority to File on Behalf of the Trust

Pursuant to the Deed of Settlement creating the Trust, the Trust acts through two trustees. Only those trustees and persons acting on their behalf have authority to take legally binding steps on the Trust's behalf.

The trustees at the time of the filing of the Petitions and at all other relevant times were Mr. Christian de Ville de Goyet and Mr. Pierre Drion (the "Trustees").

Authority to remove and replace trustees and fill any vacancy which might arise in the office of trustee vests in a person denominated as the "protector" in the Deed of Settlement.

Mr. Philip Forlenza was the protector of the Trust at the time of the filing of the Petitions. The sole asset of the Trust is the stock of Neuter. Such stock is located in the Cayman Islands. The books and records of the Trust are in the custody of

the Trustees and are located in Belgium and Luxembourg. The Trustees are citizens of Belgium. Mr. de Ville is a domiciliary of Luxembourg, and Mr. Drion is a domiciliary of Belgium.

The Trustees did not authorize the filing of a Title 11 petition for it by Mrs. Newman, Mr. Kanbar or any other person. The Trustees did not authorize Mrs. Newman or Mr. Kanbar to act in any fashion on behalf of, or as attorney for, the Trust.

Under the Deed of Settlement, a trustee may only be removed by, among other things, providing him with notice of removal. Mrs. Newman never provided Mr. de Ville or Mr. Drion with notice of their removal as trustees, nor did she have any authority to do so.

Within 60 days before the filing of the Petitions, Mrs. Newman directed correspondence to Mr. de Ville in which she recognized him as a trustee of the Trust with authority to act on the Trust's behalf.

*Authority to Act for Corporate Entities*

Mrs. Newman did not have any authority to file a petition on behalf of Neuter. Its Articles of Association give its Directors the power to exercise all powers of the corporation. The filing was not authorized by the Directors.

Mrs. Newman is not an officer, shareholder or director of Neuter.

Mrs. Newman did not have authority to file Title 11 petitions on behalf of CRI, Moncar, Cadrest Houston, Cadrest Dallas, Cadrest New York, Geomer and Genius. Mrs. Newman is not an officer, director, employee, agent or shareholder of any of these corporations and has no authority to take any action whatsoever on their behalf.

The boards of directors of CRI, Moncar, Cadrest Houston, Cadrest Dallas, Cadrest New York, Geomer and Genius did not adopt resolutions authorizing the filing of the Petitions, or any other type of bankruptcy or insolvency petition, on their behalf by anyone. Nothing in their certificates of incorporation or by-laws authorizes the filing of any kind of bankruptcy or insolvency petition on their behalf by any officer or any other person without the

specific authorization of their boards of directors.

Mrs. Newman is not an officer, director, employee, agent or shareholder of CRI, Moncar, Cadrest Houston, Cadrest Dallas, Cadrest New York, Geomer or Genius.

Mrs. Newman also did not have authority to file a Title 11 Petition on behalf of Cadillac Bar. Mrs. Newman is not an officer, director, employee, agent or shareholder of Cadillac Bar. Its board of directors did not adopt a resolution authorizing the filing of a Chapter 7 petition or any other kind of bankruptcy or insolvency petition on its behalf by anyone. Nothing contained in the articles of incorporation or by-laws of Cadillac Bar authorizes the filing of any kind of bankruptcy or insolvency petition on its behalf by any officer or any other person without the specific authorization of the Board of Directors.

Mr. Kanbar does not represent and has never represented the Trust or any of the corporate Entities.

Immediately following the filing of the Petitions, Mr. Kanbar sent by telecopier to critical lenders and brokers for Mr. Newman and the Entities, namely the Monte Carlo offices of Thomson McKinnon and Citibank, copies of the allegedly voluntary Chapter 7 petition he filed on behalf of Moncar, which maintained accounts with such institutions and then had pending a loan application with Citibank.

Promptly following the filing of the Petitions, on July 24, 1989, Mr. Kanbar was advised by counsel for the Entities that they were not authorized and requested immediately that the Petitions be withdrawn. Mr. Kanbar refused to do so.

*The Bogus Resolutions and Certificates*

In response to the Motion to Dismiss filed by the Entities, Mr. Kanbar, acting on behalf of Mrs. Newman, filed, on August 9, 1989 a Resolution of the Omega Trust, purporting, among other things, to authorize the filing of the Petitions and to remove and replace the officers and directors of the corporate Entities. This resolution was signed by Mrs. Newman. This resolution was without authorization.

On August 9, 1989, Mr. Kanbar, acting on behalf of Mrs. Newman, filed a series of Officer's Certificates purportedly on behalf of each of the corporate Entities, each of which recited resolutions removing and replacing the officers and directors of the corporation and authorizing the filing of a Chapter 7 petition. Each such certificate was signed by Mr. Kanbar as the purported secretary of such corporation. Each such certificate was unauthorized.

As a consequence of Mr. Kanbar's actions in, among other things, filing and presenting the 'unauthorized' resolutions and certificates, this Court directed the parties to appear at a full evidentiary hearing on August 17, 1989.

*The August 17 Hearing*

On August 17, the Entities appeared at said hearing and offered the testimony of:

1. Mr. Newman
2. Mr. Christian de Ville de Goyet, one of the Trustees and a director of Neuter, with respect to the Trust and Neuter; Mr. de Ville traveled to the Court from Portugal for purposes of the hearing;
3. John Goodwill, Esq., a barrister admitted to practice at the Inns of Court in England and an expert in the trust and corporate law of the Cayman Islands, as an expert witness with respect to questions of Caymanian law; Mr. Goodwill traveled from Grand Cayman to the Court for purposes of the hearing;
4. Ms. Gabriela Leber, the secretary of CRI, Moncar, Cadrest Houston, Cadrest Dallas, Cadrest New York, Goemer and Genius, called to testify with respect to the corporate records of such Entities and the actions of their boards of directors; Ms. Leber traveled from Houston, Texas to the Court for purposes of the hearing;
5. Ms. Mary Lewis, the majority shareholder and secretary of Cadillac Bar, called to testify with respect to the corporate records of Cadillac Bar and the actions of its shareholders and board of directors; Ms. Lewis traveled from San Francisco, California to the Court for purposes of the hearing.

Each of these witnesses was called and prepared to testify with respect to matters placed in issue by the filing of the Petitions and the subsequent submissions of Mrs. Newman and Mr. Kanbar. Only Messrs. Newman and de Ville actually testified.

After hearing the evidence of Messrs. Newman and de Ville and questioning Mr. Kanbar with respect to his proffer of evidence, the Court advised counsel that it was clear that the Petitions had not been properly authorized and that the continuation of the hearing might only increase the potentially sanctionable damages incurred by the Entities and Mr. Newman.

Mr. Kanbar then withdrew the Petitions.

*The Orders of Dismissal*

On August 24, 1989, this Court entered orders dismissing each of the Petitions and scheduling a hearing with respect to the Entities' motions for sanctions pursuant to Bankruptcy Rule 9011 for September 28, 1989. The order dismissing the involuntary petition filed against Mr. Newman scheduled a hearing on his motion for sanctions and his request for damages pursuant to 11 U.S.C. § 303(i) as well.

On September 5, 1989 Mr. Kanbar filed "Motions for Rehearing" in each of the Chapter 7 cases involving the Entities and Mr. Newman.

The "Motions for Rehearing" invoked Bankruptcy Rule 9023 and Rule 59 of the Federal Rules of Civil Procedure and incorrectly recited as a ground therefor that the parties had agreed that "the only matter that would survive the voluntary dismissal was a motion for sanctions."

On September 13, 1989 the Entities and Mr. Newman submitted their letter memorandum in opposition to the "Motions for Rehearing." Immediately after such letter memorandum was served on Mr. Kanbar, he withdrew his "Motions for Rehearing."

*The September 28 Hearing.*

At the September 28 hearing the Court received by proffer the testimony of David W. Dykhouse with respect to legal costs

incurred by the Entities in opposing the Petitions, summarized as follows:

1. Legal Fees & Costs:

| | |
|---|---|
| Patterson, Belknap to 8/31 | $ 85,515.85 |
| Response to Motions for Rehearing | 2,562.50 |
| Cayman Islands counsel | 328.91 |
| Interpreter | 250.00 |
| Transcript | 501.50 |

2. Witness Costs:

| | |
|---|---|
| Mr. de Ville | 4,612.37 |
| Mr. Goodwill | 7,678.90 |
| Ms. Lewis | 2,632.04 |
| Ms. Leber | 1,056.60 |
| Mr. Newman | 2,155.00 |

3. Cost of Lost Services:

| | |
|---|---|
| Mr. Newman | 10,416.66 |
| Ms. Leber | 816.33 |

TOTAL: $118,526.66

Additionally, the Court heard the testimony of Mr. Peter Pedrazzo, a food and beverage manager of the Cadillac Restaurant in New York, which is owned and operated by Cadrest New York. Mr. Pedrazza testified that, as a consequence of the filing of the Petitions by Mr. Kanbar and Mrs. Newman, two vendors had modified credit arrangements to the restaurant and were now requiring cash on delivery for merchandise. Although Mr. Kanbar did not object to the hearsay nature of this testimony, this Court will not give any weight to the hearsay testimony.

The Entities advised the Court that they were unable to quantify the commercial damage they had incurred and expected to continue to incur, although, according to Mr. Pedrazzo's testimony, they had suffered actual damage to their credit.

Mr. Kanbar objected generally to the "excessive amount" of the fees charged by the Patterson firm, but he raised no other objection to the evidence submitted on behalf of the Entities.

The evidence of damages offered by the Entities, with the exception of the hearsay testimony, is reasonable and well-documented and is accepted by the Court.

Mr. Kanbar and Mrs. Newman failed to introduce or proffer any evidence which would have supported a reasonable contention of due authority to file the Petitions.

Mr. Kanbar and Mrs. Newman have not advanced any argument well founded in law or amounting to a good faith argument for the extension, modification or reversal of existing law, in support of their authority to file the Petitions.

The purported resolutions of the Trust and the purported officers' certificates of the corporate Entities filed by Mr. Kanbar on August 9 and bearing the signatures of Mrs. Newman and Mr. Kanbar were fraudulent and were filed for improper purposes within the contemplations of Bankruptcy Rule 9011.

The documents filed by Mr. Kanbar at and following the August 9 hearing were an "unreasonable" and "vexatious" multiplication of the proceedings within the contemplation of 28 U.S.C. § 1927.

### Discussion

Bankruptcy Rule 9011, which incorporates Rule 11 of the Federal Rules of Civil Procedure, states:

Rule 9011. Signing and Verification of Papers.

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule statement of financial affairs, statement of executory contracts, statement of intention, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that *to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument*

*for the extension,* modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee. (Emphasis added)

Bankruptcy Rule 9011 imposes affirmative duties on parties to investigate both as to the law and facts. *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1508 (9th Cir. 1987); *Donaldson v. Clark,* 819 F.2d 1551, 1555–56 (11th Cir.1987); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985).

■ The signer of the documents is also obliged to review those documents and information reasonably available to the signer that tends to prove or disprove any fact of claim asserted. *Eastway Const. Corp.,* 762 F.2d at 254; *In re Medical One, Inc.,* 68 B.R. 150 (Bankr.M.D.Fla.1986).

The Second Circuit, in *Eastway Const. Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985) set forth the test to be used in determining whether Rule 11 violations have occurred:

> [T]he language of the new Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a *reasonable inquiry* into the viability by a pleading before it is signed.
>
> \* \* \* \* \* \*
>
> [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where after *reasonable inquiry,* a competent attorney could not form a reasonable belief that the pleading is well grounded in fact

and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Id.* at 254 (Emphasis added)

■ Mr. Kanbar proffers the proposition that because Mrs. Newman is *a* beneficiary of the Omega Trust, that through some theory of constructive trust she was empowered to file the bankruptcy petitions for the debtors. This Court finds that theory to be completely without merit. In fact, Mr. Kanbar failed to provide this Court with any case law in support of that theory during the trial. It is not this Court's intention to "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Id.* But, when it is so patently clear, as it is in this case, that the claims of a petitioning party are completely lacking in merit an imposition of sanctions will not result in any "chilling" effect on creative lawyering. The court in *Eastway Constr. Corp.* noted that:

> [W]here it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.

*Id.*

■ Mrs. Newman was well aware that the Trustees or person acting on their behalf had the authority to file the petitions. Mrs. Newman never had the authority to act on behalf of the Trustees. As for the other 'alleged' debtors, Mrs. Newman was not an officer or director of these companies and was not authorized to file the voluntary petitions for those companies.

It is quite clear to this Court that the only reason for the filing of these voluntary petitions as well as the involuntary petition against Mr. Newman was for purposes of harassment. This becomes crystal clear when viewing the filing against a backdrop of the prepetition activities of Mrs. Newman. Accordingly, this court is only left with a determination of the sanctions.

■ Sanction are mandatory in nature. *Brown v. Fed'n of State Medical Bds.,* 830

F.2d 1429, 1433 (7th Cir.1987); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985); *McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C. Cir.1986). Once the court finds that Rule 11 has been violated, the court has no choice but to impose appropriate sanctions.

■ However, the type of sanctions imposed is at the discretion of the judge. *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1175 (D.C.Cir.1985); *Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 122 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Albright v. Upjohn Co.*, 788 F.2d 1217, 1222 (6th Cir.1986); *INVST Fin. Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th Cir.) *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 559 (9th Cir.1986), *cert. denied*, 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987).

■ Among the types of sanctions that the court, in its discretion, may choose to impose are:

a. a reprimand of the offender;

b. mandatory continuing legal education;

c. a fine;

d. an award of reasonable expenses, including reasonable attorneys' fees, incurred as a result of the misconduct;

e. reference of the matter to the appropriate attorney disciplinary or grievance authority;

f. an order precluding the introduction of certain evidence;

g. an order precluding the litigation of certain issues;

h. an order precluding the litigation of certain claims or defenses;

i. dismissal of the action;

j. entry of a default judgment;

k. injunctive relief limiting a party's future access to the courts; and

l. censure, suspension or disbarment from practicing before the forum court, subject to applicable rules or statues.

*Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157–58 (3d Cir.1986); *Davis v. Veslan Enterprises.*, 765 F.2d 494, 500–01 & n. 14 (5th Cir.1985); *In re Kelly*, 808 F.2d 549, 552 (7th Cir.1986); *Cheek v. Doe*, 828 F.2d 395, 397–98 (7th Cir.), *cert. denied*, 484 U.S. 955, 108 S.Ct. 349, 98 L.Ed.2d 374 (1987); *In re Disciplinary Action Curl*, 803 F.2d 1004, 1007 (9th Cir.1986); *Cotner v. Hopkins*, 795 F.2d 900, 902–03 (10th Cir.1986); *Gagliardi v. McWilliams*, 834 F.2d 81, 82–83 (3d Cir.1987); *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866 (5th Cir.1988) (en banc); *Frantz v. United States Powerlifting Fed'n*, 836 F.2d 1063, 1066 (7th Cir.1987).

In determining the sanctions, this Court will combine the effects of the voluntary petition together with the involuntary petition.

Some of the mitigating and aggravating factors that have been taken into consideration by courts in determining the type of sanction to impose are:

a. The good faith or bad faith of the offender;

b. The degree of willfulness, vindictiveness, negligence or frivolousness involved in the offense;

c. The knowledge, experience and expertise of the offender;

d. Any prior history of sanctionable conduct on the part of the offender;

e. The reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;

f. The nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;

g. The relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;

h. The risk of chilling the specific type of litigation involved;

i. The impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;

j. The impact of the sanction on the offended party, including the offended person's need for compensation;

k.  The relative magnitude of sanction necessary to achieve the goal or goals of the sanction;

l.  Burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs;

m.  The degree to which the offended person attempted to mitigate any prejudice suffered by him or her;

n.  The degree to which the offended person's own behavior caused the expenses for which recovery is sought;

o.  The extent to which the offender persisted in advancing a position while on notice that the position was not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and

p.  The time of, and circumstances surrounding, any voluntary withdrawal of a pleading, motion or other paper.

*Lieb v. Topstone, Indus., Inc.,* 788 F.2d 151, 157–58 (3d Cir.1986); *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987); *In re Disciplinary Action of Curl,* 803 F.2d 1004, 1007 (9th Cir.1986); *Huettig & Schromm, Inc. v. Landscape Contractors Council,* 790 F.2d 1421, 1426–27 (9th Cir. 1986). *INVST Fin. Group, Inc. v. Chem–Nuclear Systems, Inc.,* 815 F.2d 391, 404 (6th Cir.) *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.,* 827 F.2d 984, 988 (4th Cir.1987); *Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985); *Oliveri v. Thompson,* 803 F.2d 1265, 1281 (2d Cir. 1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Anschutz Petroleum Mktg. Corp. v. E.W. Saybold & Co., Inc.,* 112 F.R.D. 355, 358 (S.D.N.Y. 1986); *Miller v. United States,* 669 F.Supp. 906, 911 n. 3 (N.D.Ind.), *aff'd,* 868 F.2d 236 (1989); *Brown v. Fed'n of State Medical Bds.,* 830 F.2d 1429 (7th Cir.1987).

■ None of the above listed factors weigh heavily, if at all, in favor of Mr. Kanbar and Mrs. Newman. This Court, as previously mentioned, is suspect of the intentions and good faith of Mr. Kanbar and Mrs. Newman in filing the bankruptcy petitions. Mr. Kanbar is a seasoned attorney who, if not familiar with the bankruptcy laws, was under an obligation to make a full investigation on the merits of the bankruptcy petitions prior to filing them. Furthermore, the conduct of Mrs. Newman, prior to appearing before this Court, indicates an intention to harass Mr. Newman rather than exercise any of her legal rights.

In an attempt to defend against the meritless bankruptcy petitions, costs were incurred for the supplying of witnesses, an interpreter and for the obtaining of a transcript of the hearing held. These costs, which add up to $18,886.41, are imposed as sanctions against Mr. Kanbar and Mrs. Newman, jointly and severally.

■ In determining whether to impose attorney's fees and the appropriate and reasonable amount thereof, this Court must consider:

i.  the time and labor required;

ii.  the novelty and difficulty of the questions involved;

iii.  the skill requisite to perform the legal service properly;

iv.  the customary fee;

v.  whether the fee is fixed or contingent;

vi.  time limitations imposed by the client or the circumstances;

vii.  the amount involved and the results obtained;

viii.  the experience, reputation and ability of the attorneys;

ix.  awards in similar cases; and.

*Great Hawaiian Fin. Corp. v. Aiu,* 116 F.R.D. 612, 619 (D.Haw.1987); *Eastway Constr. Corp. v. City of New York,* 637 F.Supp. 558, 569–75 (E.D.N.Y.1986), *mod'd,* 821 F.2d 121, 122–24 (2d Cir.), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

■ At the hearing on sanctions, Mr. Kanbar indicated that the attorney's fees did not properly reflect the novelty or difficulty of the legal questions involved. He was correct. There was no legal merit

whatsoever to a theory of constructive trust. However meritless Mr. Kanbar's theory may have been, the law firm of Patterson, Belnap, Webb and Tyler would have been remiss in their duty to their client if they did not put in the time and labor to address the filing of those unauthorized petitions. Accordingly, the legal fees of $88,407.26 is imposed as a sanction against Mr. Kanbar and Mrs. Newman, jointly and severally.

The cost of loss of services is not imposed as a sanction.

Finally, Mr. Kanbar requested this Court to consider a lesser sanction due to his financial hardship.

In accordance with this Court's instructions, Mr. Kanbar supplied this Court, subsequent to the hearing, with an affidavit concerning his finances. In light of the activities of Mr. Kanbar and Mrs. Newman, this Court finds that any of the lesser alternatives to be inappropriate. Someone has to pay for this folly and it should not be Mr. Newman.

Settle Order consistent with this opinion on five days' notice.