In re AP INDUSTRIES, INC., Debtor.

AP INDUSTRIES, INC., Plaintiff,

v.

SN PHELPS & COMPANY, Bader and Bader, and I. Walton Bader, Defendants.

Bankruptcy No. 90 B 11614 (BRL).
Adv. No. 90–5975A.

United States Bankruptcy Court, S.D. New York.

July 26, 1990.

Zellermayer Gratch & Jacobs, P.C., Andrew Brozman, New York City, for debtor/plaintiff.

Bader and Bader by I. Walton Bader, White Plains, N.Y., for defendants.

## MEMORANDUM DECISION ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Chief Judge.

### INTRODUCTION

On May 15, 1990, AP Industries, Inc. (the "Debtor") commenced the adversary proceeding herein (the "Adversary Proceeding") against a creditor SN Phelps & Company, ("Phelps"), Phelps' attorney I. Walton Bader, and the law firm Bader & Bader (together, "Bader") (collectively, the "Defendants") seeking relief under §§ 362(a) and (h) of the Bankruptcy Code (the "Code") and, alternatively, an injunction pursuant to § 105 of the Code. In response, the Defendants filed a motion which, although ambiguous and in part internally inconsistent, appears to seek, *inter*

*alia:* (i) the dismissal of the entire bankruptcy case; (ii) the dismissal of the Adversary Proceeding (both on the ground that the transfer of venue in the case from the District of New Jersey deprived this Court of subject matter jurisdiction); (iii) summary judgment on the substantive claims asserted in the Adversary Proceeding; and (iv) a further change of venue of the Chapter 11 case to the District of Delaware.

## BACKGROUND

On March 27, 1990 (the "Filing Date"), an involuntary petition under Chapter 7 of Title 11 of the Code was filed against AP Industries, Inc. by three putative unsecured creditors of the Debtor (the "Chapter 7 Case") in the United States Bankruptcy Court for the District of New Jersey (the "New Jersey Bankruptcy Court") and was assigned to Judge Tuohey. Defendant Phelps was among the petitioning creditors seeking bankruptcy administration over the Debtor's affairs [1].

On April 3, 1990, the Debtor filed as a matter of statutory right (*see*, § 706 of the Code) a voluntary petition under Chapter 11 of the Code which supersedes the Chapter 7 Case. Consequently, pursuant to §§ 1107 and 1108 of the Code, the Debtor is authorized to continue in possession of its property and is currently operating its businesses as a debtor-in-possession.

The Debtor is a holding company which, prior to the Chapter 7 Case, engaged in a variety of businesses through its operating subsidiaries, including the manufacture and distribution of electronic and metal components; the manufacture and marketing of hardwood flooring and furniture stock; and the franchise of muffler, brake, automotive repair and automotive transmission repair shops. The Debtor's principal wholly-owned operating subsidiaries were Nytronics, Inc. ("Nytronics"), the Burruss Company, Tuffy Associates Corp., and LM

Holdings Corp. The Debtor also owned shares and warrants of H.H.R. Food Industries, Inc. ("HHR"). All of the common stock of the Debtor is held by D.E.H. Holdings, Ltd. ("DEH").

In May, 1990, the Debtor brought on a motion with the consent of the official committee of unsecured creditors (the "Creditors' Committee") [2] to transfer venue, pursuant to 28 U.S.C. § 1412, from the District of New Jersey to the Southern District of New York. Phelps opposed the venue motion. In its opposition, Phelps conceded that venue was proper in New Jersey. Phelps argued, however, that notwithstanding the plain language of 28 U.S.C. § 1412 permitting the transfer of a case on "convenience" grounds to any district, the court could lawfully effect a transfer only to a district in which the case originally could have been properly venued.

By Order dated May 18, 1990, Judge Tuohey overruled Phelps' objection and granted the Debtor's motion (the "Venue Order"). Judge Tuohey denied Phelps' request for a stay of the Venue Order pending an appeal. Phelps elected neither to obtain a stay pending appeal from the New Jersey District Court nor to pursue an appeal of the Venue Order. (*See*, Bankruptcy Rule 8001, *et seq.*). Consequently, the case was duly transferred to this district.

*The Debtor's Pre–Petition Negotiations With its Creditors*

Prior to the Filing Date, by Prospectus and Consent Solicitation (the "Prospectus"), the Debtor had initiated an exchange offer (the "Exchange Offer") to holders of its 12⅜% Subordinated Debentures due 2001, of which there were $88,000,000 principal amount outstanding (the "Debentures"). The Exchange Offer was part of a restructuring plan conceived by the Debtor in negotiation with its Debenture hold-

---

**1.** Debtor asserts, upon information and belief, that the other two petitioning creditors are persons affiliated with Phelps or acting at Phelps' instance, direction and control. This Court has authorized Bankruptcy Rule 2004 examinations in order to ascertain, *inter alia,* the relationships among the petitioning creditors.

**2.** On April 18, 1990, Phelps and an affiliate of Phelps were appointed by the United States Trustee for the District of New Jersey as members of the Creditors' Committee in the Debtor's reorganization, a fiduciary capacity in which they continue to serve.

ers in response to its then current financial condition.

In connection with the negotiated restructuring, the Debtor retained the firm of Drexel Burnham Lambert, Inc. ("Drexel") as its financial advisor while the financial interests of the Debenture holders were represented by the Gordian Group ("Gordian"). For purposes of negotiating the terms of the restructuring plan, the Debenture holders constituted an "unofficial committee" of Debenture holders representing the majority of the Debentures then outstanding. The then unofficial Debenture holders committee obtained legal advice from the law firm of Weil Gotshal & Manges, now counsel to the Creditors' Committee.

After the course of many months of comprehensive negotiations, an agreement in principle was reached between the Debtor and Drexel, on the one hand, and the unofficial Debenture holders committee and Gordian, on the other. A "term sheet" memorializing the negotiated restructuring was circulated among the parties on August 16, 1989 [3].

An integral part of that negotiated restructuring comprised the sale of, principally, the Debtor's Nytronics and HHR assets to EY Holdings, Inc. ("EY"), a company to be formed by the ultimate equity security holder of DEH and a secured creditor of DEH. The negotiated consideration for the asset sale (hereinafter, the "EY Transaction") was, as follows: a senior secured promissory note aggregating $4,161,516 in original principal amount; a ten-year warrant to purchase up to 25% of EY, which also entitled the holder of the warrant to require EY to purchase the warrant after nine years at $3,000,000; and other consideration specified in the Prospectus. As further consideration for the EY Transaction, EY was required to obtain the release of the Debtor from any and all claims of General Electric Credit Corp., a secured creditor of Nytronics that had alleged substantial claims against the Debtor. The

EY Transaction was consummated prior to the filing of the Chapter 7 Case.

The Exchange Offer proposed to exchange for each $1,000 principal amount of the Debentures a cash payment of $50.00, $340.91 principal amount of AP Senior Notes, and one share of newly issued common stock of the Debtor after giving effect to the cancellation of the shares of common stock in the Debtor owned by DEH (the "New AP Stock"). Effectively, therefore, ownership of the assets of the Debtor, with the exception of those sold to EY, would be transferred to the Debenture holders by consummation of the Exchange Offer. To be effective, the Exchange Offer required the valid tender of 95% of the existing Debentures, *i.e.*, approximately $83,000,000 in principal amount.

The Debtor asserts that prior to the completion of the Exchange Offer, Phelps, which, along with certain parties for which it purports to act as the attorney-in-fact, holds approximately 18% of the principal amount of the Debenture, indicated its intention to withhold its Debentures from the tender absent acquiescence by the Debtor to its individual demands. Moreover, Debtors contend that among the demands made by Phelps was a demand for control of the Debtor at the expense of the other, majority Debentures holders who were entitled to their *pro rata* shares of the New AP Stock under the terms of the Exchange Offer.

Furthermore, the Debtor alleges that in an effort to compel the Debtor to capitulate in the face of Phelps' individual demands, Phelps engaged in a series of improprieties. The Debtor maintains that Phelps engaged in, *inter alia*, the following improper conduct: (i) the offer of financial inducements to the firm of Alvarez & Marsal, Inc. ("A & M"), the crisis management firm retained at the behest of the unofficial Debenture holders committee to manage the Debtor pending the Exchange Offer and thereafter, in an attempt to persuade A & M to disregard its duties and responsibilities to the Debtor and the Debenture holders for

---

**3.** As part of the 2004 examination, the Debtor is investigating whether at the time of the August 16, 1989 term sheet, Phelps had yet to accumu-

late a significant position, if any, in the Debentures.

the singular benefit of Phelps and its individual agenda; (ii) the offer of financial inducements to the ultimate equity security holder of the Debtor, Ezra Harel, in an attempt to achieve the same individual agenda; and (iii) the issuance of threats of litigation against certain other Debenture holders in an effort to induce the sale of their holdings to Phelps or its affiliates or to induce acquiescence to Phelps' individual agenda.

Debtor purports that when A & M and Harel rebuffed Phelps' improper business practices and Debtor determined to proceed without variance from the terms of the Exchange Offer, Phelps commenced the Chapter 7 Case. The Debtor asserts that it superseded Phelps' involuntary Chapter 7 Case with a voluntary case under Chapter 11 for the purpose of consummating the Exchange Offer, negotiated by Gordian and the unofficial Debenture holders committee, in the form of a consensual plan of reorganization. The Debtor states that its intent remains to afford control of the Debtor to the Debenture holders through the New AP Stock as a reorganization security.

Additionally, the Debtors allege that after the Filing Date, as part of Phelps' continuing efforts to frustrate the Exchange Offer and, now, the plan of reorganization, Phelps caused Bader to commence two litigations in the State Courts of the State of New York purportedly as class actions on behalf of Phelps and all other present holders of the Debentures (representing the overwhelming bulk of the creditors of his estate) (the "New York Actions"). Essentially, each of the New York Actions centers upon the allegation that the EY Transaction constituted a fraudulent transfer of the Debtor's property.

On April 16, 1990, the Defendants first commenced an action in the New York Supreme Court, County of New York, entitled *SN Phelps & Company v. Ezra Harel, et al.*, Index No. 8618/1990 (the "New York County Action"), against the Debtor's directors and certain persons who are alleged to be directors. In its complaint, Phelps alleges among its central allegations "common to the Class" that: (i) the EY Transaction was accomplished "without adequate consideration [to the Debtor] while AP INDUSTRIES, INC. was insolvent"; and (ii) that the defendant directors made "a transfer of assets of AP INDUSTRIES, INC. in fraud of creditors." (*See*, New York County Action Complaint at ¶ 17). Phelps seeks damages of $88,000,000, constituting the principal outstanding amount of the Debenture, plus interest, and punitive damages.

On April 19, 1990, Defendants then commenced an action in New York Supreme Court, County of Westchester, entitled *SN Phelps & Company v. Alvarez & Marsal, Inc. et al.*, Index No. 7015/1990 (the "Westchester County Action"), against A & M and its principals. The complaint in the Westchester County Action contains almost identical allegations to the New York County Action asserting, against A & M, common issues respecting the inadequacy of the consideration for the EY Transaction and alleging that the EY Transaction was in fraud of creditors. (*See*, Westchester County Action Complaint at ¶ 12). The complaint similarly demands $88,000,000 in damages in respect of the "wrongs" occasioned through the EY Transaction.

Upon learning of the commencement of the New York County Action, counsel to the Debtor advised Bader, by letter dated May 1, 1990, that the commencement and continued prosecution of the New York County Action was "violative of Section 362 of the Bankruptcy Code," and requested the immediate cessation of all acts in furtherance of or in connection with the New York County Action. The letter further advised Defendants that in the event "you choose to pursue the Litigation directly or indirectly, notwithstanding the strictures of Section 362 of the Bankruptcy Code, please understand that the Debtor reserves its rights to proceed against the named plaintiffs and their attorneys for civil contempt and such other remedies to which it is entitled under law."

In response to the Debtor's request, by letter dated May 1, 1990, Bader advised that he would not "agree to any stay of proceedings in the New York County Ac-

tion" and stated that "we give you notice, by this letter, that if you attempt to commence any proceedings in the Bankruptcy Court for contempt (as you threaten in paragraph 3 if your May 1 letter) we shall not only ask for Rule 9011 sanctions against you and your client, but we intend to proceed civilly in an appropriate Court against your client and your firm for actual and punitive damages."

Consequently, the Debtor commenced this Adversary Proceeding seeking relief, *inter alia*, under §§ 362(a) and (h) of the Code, and, alternatively, an injunction under § 105 of the Code against Defendants restraining them from taking any action of any kind in further prosecution of the New York Actions. Concurrently, the Debtor brought on a motion for a temporary restraining order and a preliminary injunction in order to preserve the status quo pending the trial of the Adversary Proceeding. At the hearing on the temporary restraining order before Judge Tuohey, Bader appeared and consented on behalf of the Defendants to take no further action in connection with the continuation or prosecution of the New York Actions, directly or indirectly, pending an order of the Bankruptcy Court authorizing the New York Actions to proceed. The Defendants' stipulation was "So Ordered" by Judge Tuohey and thereby became an order of the court.

On June 4, 1990, Defendants filed a motion seeking, *inter alia*, as far as this Court can discern, to dismiss this Adversary Proceeding pursuant to Bankruptcy Rule 7012 or, in the alternative for summary judgment dismissing the Debtor's complaint under Bankruptcy Rule 7056 ("Defendants' Motion"). The Defendants assert in their motion that (1) this Court has no jurisdiction of either this Adversary Proceeding or the underlying Bankruptcy Proceeding because of improper venue; (2) this Court lacks jurisdiction of this Adversary Proceeding because it is not a "core proceeding"; (3) the injunction sought by the Debtor is in violation of the "Anti–Injunction Act" set forth in Title 28 of the United States Code since it seeks to enjoin State Court Proceedings; and (4) the injunction sought by the Debtor is improper because

the New York Actions are not directed against the Debtor but relate to misconduct committed by officers and directors of the debtor *"prior to the filing of the Petition in Bankruptcy herein."* (Defendants' Motion at 3; emphasis in original).

## DISCUSSION

*Whether Defendants' Motion For Relief is Procedurally Defective.*

Defendants' Motion, insofar as it seeks dismissal of the Chapter 11 case, a transfer of venue of the case to the District of Delaware and summary judgment, is procedurally defective. Thus, without even reaching the merits, the relief sought in Defendants' Motion must be denied because of the following infirmities.

Section 1112(b) of the Code specifies that a Chapter 11 case may be dismissed for "cause" only "after notice and a hearing." Bankruptcy Rules 1017 and 2002(a) set forth the noticing requirements for § 1112(b) dismissal motion. Rule 2002(a) provides, in pertinent part as follows:

> [T]he clerk, or some other person as the court may direct, shall give the debtor, the trustee, *all creditors* and indenture trustees not less than 20 days notice by mail of ... (5) in a chapter 7 liquidation and a chapter 11 reorganization case, the hearing on the dismissal or conversion of a case to another chapter ... (emphasis added).

When a party in interest purports to move for the dismissal of a case without first having afforded the requisite notice, the motion may not be heard. *See, In re Zip Print, Inc. (Zip Print, Inc. v. Keller)*, 4 B.R. 676, 677 (Bankr.N.D.Ga.1980). In *Zip Print, Inc.*, the bankruptcy court held that a motion made by a defendant in an adversary proceeding to dismiss the plaintiff-debtor's Chapter 11 case would not be considered unless and until proper notice was afforded with the moving party to bear all costs and expenses of the notice. *Id.* In this instance, Defendants have submitted no evidence of compliance with

Bankruptcy Rule 2002(a). Moreover, even if the Defendants' could demonstrate compliance with the noticing requirements, Defendants' Motion, insofar as it *may* seek to dismiss the Chapter 11 case, is so cryptic that a party receiving the document would not be afforded the type of due process required under the circumstance to warrant consideration of the motion on its merits. Additionally, one would have to be baffled by a request by these Defendants to dismiss this case as Phelps was among the group who initially opened the door to the bankruptcy court by filing an involuntary petition with bankruptcy court oversight as a principal goal. To date, no reason other than some vague litigation strategy purpose has been offered to explain the current quest to eliminate bankruptcy administration.

■ Additionally, the venue portion of Defendants' Motion is equally defective because Defendants have not sought to afford notice to such creditors "as directed by the court" pursuant to Bankruptcy Rule 1014(a). Parenthetically, no suggestion is made by Defendants that the District of Delaware would be a more convenient forum.

■ Finally, the summary judgment portion of Defendants' Motion is also procedurally defective because Defendants have failed to comply with Local Bankruptcy Rule 13(h) which requires the submission of a "statement of material facts as to which the moving party contends there is no genuine issue to be tried." Local Bankruptcy Rule 13(h) provides in pertinent part as follows:

> On any motion for summary judgment pursuant to Bankruptcy Rule 7056, there *shall be annexed* to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. *Failure to submit such a statement constitutes grounds for denial of the motion.* (emphasis added).

Since Defendants have failed to comply with Local Bankruptcy Rule 13(h), their request for their summary judgment must be denied.

■ Nevertheless, a motion for summary judgment also "searches the record" and, if undisputed facts are found which, when applied to the law, indicate that judgment against the moving party is appropriate, Federal Rule 56(c) of the Federal Rules of Civil Procedure (the "Federal Rules"), as made applicable herein pursuant to Bankruptcy Rule 7056, will operate to grant summary judgment in favor of the non-moving party.

> [M]aking of a motion for summary judgment exposes the moving party to the risk that summary judgment will be granted against him, if the submissions make clear that there is 'no genuine issue as to any material fact and that the [adverse] party is entitled to judgment as a matter of law'.

*Siderius, Inc. v. M.V. "Ida Prima"*, 613 F.Supp. 916, 923 (S.D.N.Y.1985); accord, *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir.1989); *Lowenschuss v. Kane*, 520 F.2d 255 (2d Cir.1975) (*sua sponte* award of summary judgment in favor of non-moving party appropriate). No formal "cross-motion" is necessary or required. 10A Wright & Miller, *Federal Practice & Procedure 2d* § 2720.

Pursuant to Federal Rule 56, summary judgment is appropriate when there is no material fact in dispute and the court may decide the issues as a matter of law. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980). The court's role in ruling on a motion for summary judgment is to determine whether there exists a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ Local Bankruptcy Rule 13(h) provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Since Defendants have failed to file a Rule 13(h) statement controverting the

Debtor's submission, the Debtor's statement is deemed admitted.

Based on the record, including all the pleadings, the uncontested affidavit of Curtis G. Solsvig, and the documents submitted, this Court finds that there is no genuine issue as to any material fact. Consequently, in accordance with the discussion to follow, summary judgment in favor of the Debtor is appropriate as a matter of law. Moreover, even assuming, *arguendo*, that Defendants' Motion was not procedurally defective, this Court also finds that on the merits, Defendants' Motion must be denied in its entirety.

*Whether Defendants' Request For A Change In Venue Is Appropriate.*

▇▇▇ The Defendants are clearly estopped from contending that the venue of this case or the Adversary Proceeding is improper, or that either suffers any defect as a result of the change in venue. The Defendants participated in the proceedings resulting in the Venue Order, lost and thereafter sought no appeal from the Venue Order. Accordingly, Defendants' Motion constitutes a *de facto* appeal taken in obvious disregard of Bankruptcy Rule 8001, *et seq.* and of 28 U.S.C. § 158 and is no more than an improper collateral attack on the Venue Order. The rationale underlying the bar against collateral attack is twofold: (1) that there be finality to matters administered by the judicial system; and (2) that the integrity of the appellate procedure is not circumvented. This Court will not stand as an appellate tribunal over Judge Tuohey's decision to transfer this case in the exercise of his undisputed authority and discretion.

*Whether This Court Has Subject Matter Jurisdiction.*

Phelps first invoked the subject matter jurisdiction of the Bankruptcy Court by commencing an involuntary Chapter 7 case against the Debtor. There exists no legal basis, nor have the Defendants cited any authority, to suggest that subject matter jurisdiction, once properly invoked, is extinguished by a change of venue, or perhaps in this instance by a change of mind. In-

deed, it would appear that Defendants have used two separate legal concepts interchangeably as part of the underlying basis for the relief requested in their motion.

▇▇▇ It is an axiom of the first order that venue statutes are not jurisdictional. *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1068 (5th Cir.1986); IA *Moore's Federal Practice*, Part 2, ¶ 0.344[14] (2d ed.1990). For this reason, although a subject matter jurisdiction objection cannot be waived, *see, Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167–68, 60 S.Ct. 153, 154–55, 84 L.Ed. 167 (1939), a venue objection can be. *See, Seattle–First Nat'l Bank v. Manges*, 900 F.2d 795 (5th Cir.1990). Consequently, a court can have subject matter jurisdiction to issue orders and judgments even if venue is improper. *See, Zumft v. Doney Slate Co.*, 698 F.Supp. 444 (E.D.N.Y.1988); *In re Roberts Furniture, Inc.*, 70 B.R. 29 (Bankr.S.D.Ohio 1987). It should be noted that the converse is, obviously, not the case. Since venue statutes do not involve considerations of subject matter jurisdiction, it is beyond dispute that a transfer of venue by a court with subject matter jurisdiction to a court of identical jurisdiction in a different venue cannot divest the transferee court of subject matter jurisdiction.

▇▇▇ Similarly, Defendants' assertion, that a transfer of venue is only proper if made to a district in which the case originally could have been filed, is also erroneous. Under Bankruptcy Rule 1014(a), if a petition is filed in a proper district (as Defendants concede this was), venue may be "transferred *to any other district* if the court determines that the transfer is in the interest of justice or for the convenience of the parties." *In re Delaware & Hudson Rwy. Co.*, 96 B.R. 469, n. 3 (D.Del.1989) (emphasis added). In this sense, 28 U.S.C. § 1412, governing bankruptcy venue, differs dramatically from 28 U.S.C. § 1401(a). IA *Moore's Federal Practice*, Part 2 ¶ 0.344 [14.4] at 4286.12–13. Indeed, it has even been recognized that a debtor may intentionally file in a district that is technically proper with the purpose of transferring its case on convenience grounds to a

district which would not have been appropriate for the original filing. *Id.* at 4286.-17. Obviously, no such devious purpose can be inferred here, where Defendants, themselves, made the original venue choice.

*Whether The New York Actions Involve Core Matters Which Are Property Of The Estate And Whether They Have Been Filed In Violation Of The Automatic Stay Provisions Of The Code.*

■■■ Pursuant to 28 U.S.C. § 1334(d), the "district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located of the debtor ... and of property of the estate." The District Court's jurisdiction has been referred to this Court by the "Standing Order of Referral of Cases to Bankruptcy Judges" dated July 10, 1984 (Ward, Acting C.J.). Bankruptcy courts have jurisdiction to "hear and determine ... all core proceedings ... arising in a case under title 11." 28 U.S.C. § 157(b)(1). This Court's jurisdiction is further defined by § 157(b)(2)(A), which states in pertinent part as follows:

> Core proceedings include, but are not limited to
>> (a) matters concerning the administration of the estate.

The instant Adversary Proceeding, which involves matters that impacts both on the administration and property of this estate, is a core proceeding pursuant to § 157(b)(2)(A). *See, MacArthur Company v. Johns–Manville Corp.*, 837 F.2d 89, 92 (2d Cir.1988); *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

Section 362(a) of the Code provides in pertinent part as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities, of—
>> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>>
>> \* \* \* \* \* \*
>>
>> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.
>>
>> \* \* \* \* \* \*
>>
>> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362.

■■■ The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding. *In re Colin, Hochstin Co.*, 41 B.R. 322, 325 (Bankr.S.D.N.Y.1984). "The automatic stay is intended to protect the assets of the debtor's estate from dissipation and administrative interference." *In re Johns–Manville Corp.*, 26 B.R. 420, 425, 430 (Bankr.S.D.N.Y.1983), *aff'd*, 40 B.R. 219 (S.D.N.Y.), *rev'd in part*, 41 B.R. 926 (S.D.N.Y.1984). The purpose of the protection provided by Chapter 11 is to give the debtor a breathing spell, an opportunity to rehabilitate its business and to enable the debtor to generate revenue. *See, In re Johns–Manville Corp.*, 801 F.2d 60, 64 (2d Cir.1986); *In re Talladega Steaks, Inc.*, 50 B.R. 42 (Bankr.N.D.Ala.1985).

The legislative history of § 362 of the Code indicates that Congress intended that the scope of the automatic stay be broad in order to effectuate its protective purposes on behalf of both debtors and creditors:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be

relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would not be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors....

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 49 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5835, 5963, 6296–97.

■ The Defendants cavalierly state that § 362(a) of the Code is not implicated by the New York Actions because the suit seeks money damages from various non-debtor third parties and does not seek possession or control of any property of the Debtor's estate. The Defendants are gravely mistaken. This is precisely the type of activity and burden to the estate which § 362 of the Code was intended to alleviate. The New York Actions are a transparent attempt by the Defendants to "end run" the automatic stay. The actions constitute acts to exercise control over property of the estate in violation of § 362 of the Code.

Section 541(a)(1), (3) of the Code provides that the filing of a petition in bankruptcy creates an estate that encompasses "all legal and equitable interests of the debtor in property as of the commencement of the case," and any interest in property that the trustee recovers under §§ 329(b), 363(n), 543, 550, 553, or 723 of the Code. 11 U.S.C. § 541(a)(1), (3). This provision has been broadly construed. "The scope of [§ 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in Section 70a of the Bankruptcy Act." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.Code Cong. Admin.News 5787, 5868). *See, S.I. Acquisition v. East-*

*way Delivery Service, Inc. (In re S.I. Acquisition),* 817 F.2d 1142, 1149 (5th Cir. 1987).

Courts have regularly applied § 541 of the Code to include property alleged to have been fraudulently or improperly transferred by the debtor before filing for Chapter 11 relief, which is recoverable by the trustee or debtor-in-possession as, *inter alia,* fraudulent conveyances under §§ 548 or 544 of the Code. *See, e.g., Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339, 1343 (7th Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988); *Carlton v. BAWW, Inc.,* 751 F.2d 781, 785 (5th Cir.1985); *In re Drexler Assoc., Inc.,* 57 B.R. 312, 314–15 (S.D.N.Y.1986).

■ The trustee is authorized to prosecute such claims in order to marshall the debtor's property for the benefit of *all creditors.* This fundamental principle was recently explained by the Second Circuit as follows:

Because the trustee 'represents not only the rights of the debtor but also the interest of creditors of the debtor,'; [*Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d at 1342], the trustee 'has the duty to marshal the debtor's property for the benefit of the estate, and thus the right to sue parties for recovery of all property available under state law,' *id.* at 1343. Accordingly, if, under state law, a cause of action belongs to the debtor or if 'rights of action [exist] against officers, directors and shareholders of a corporation for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy,' *id.,* those actions properly are asserted by the bankruptcy trustee.

*St. Paul Fire & Marine Insur. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 697 (2d Cir. 1989).

Sections 544(b) and 548 of the Code expressly vest in the trustee or debtor-in-possession [4] the right to assert a claim for

---

4. Pursuant to § 1107(a) of the Code, a debtor-in-

possession is vested with substantially all of the

fraudulent conveyance under state or federal law. *See*, 11 U.S.C. §§ 544(b), 548. This role "furthers the fundamental bankruptcy policy of equitable distribution among creditors [by allowing the trustee to] recover corporate assets for the benefits of all creditors of the corporation." *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986) (citations omitted). *Accord, Dana Molded Products Inc. v. Brodner*, 58 B.R. 576, 578 (N.D.Ill.1986).

In a case directly on point with the instant proceeding, *American National Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266 (5th Cir.1983), a bank sought to continue its prosecution of a cause of action under the Texas Fraudulent Transfers Act after an order for relief had been entered. Holding that the debtor retained legal and equitable interest in property allegedly fraudulently transferred, the Fifth Circuit stated as follows:

> An action under the Fraudulent Transfers Act is essentially one for property that properly belongs to the debtor and which the debtor has fraudulently transferred in an effort to put it out of the reach of creditors.... We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a 'legal or equitable interest' in the property fraudulently transferred within the meaning of section 541(a)(1) of the [ ] Code.

*Id.* at 1275 (citations omitted). *See also, Delgado Oil Company, Inc. v. Torres*, 785 F.2d 857, 861–62 (10th Cir.1986) ("While the common law action to recover preferential transfers may be maintained by creditors under certain circumstances, the intervention of the events of bankruptcy and the pervasive jurisdiction of the bankruptcy court must negate the common law right of recovery"); *Flip Mortgage Corp. v. McElhone (In re Flip Mortgage Corp.)*, 841 F.2d 531, 539 (4th Cir.1988); *Cumberland Oil Corp. v. Thropp*, 791 F.2d at 1042

(holding that claims asserted under the New York fraudulent conveyance laws are property of a debtor's estate pursuant to § 541 of the Code); *Green v. Bate Records, Inc. (In re 10th Avenue Record Distributors, Inc.)*, 97 B.R. 163 (S.D.N.Y.1989); *Kommanditselskab Sypertrans v. O.C.C. Shipping, Inc.*, 79 B.R. 534, 541 (S.D.N.Y. 1987); *Hassett v. McColley, et al. (In re O.P.M. Leasing Servs., Inc.)*, 28 B.R. 740, 759 (Bankr.S.D.N.Y.1983).

Similarly, this Court has stated in *Best Manuf., Inc. v. White Plains Coat & Apron, Inc., (In re Daniele Laundries, Inc.)*, 40 B.R. 404 (Bankr.S.D.N.Y.1984), that the intercession of a bankruptcy petition vests standing in a trustee or debtor-in-possession to prosecute an action for recovery of a fraudulent conveyance.

> [O]nce a trustee was appointed in the involuntary Chapter 7 bankruptcy cases against the Daniele Companies, [the judgment creditor's] status, as a party with standing to void transfers as fraudulent conveyances or as defective bulk sales, was impaired by the superseding bankruptcy cases. *It is axiomatic that a duly qualified trustee in bankruptcy represents the estate and is the only proper party to maintain any action under Code § 544(b) ... and that the creditors of the estate have no right to proceed independently in their own names or on behalf of the estate ....* Thus, the trustee's action supersedes [the judgment creditor's] state court action, so that [the judgment creditor] lacks standing to pursue its case against [the transferee].

*Id.* at 407–08 (citations omitted; emphasis added). *See also, In re Drexler Assoc.*, 57 B.R. at 314–15; *In re Lang*, 5 B.R. 371, 374–75 (Bankr.S.D.N.Y.1980).

Indeed, Defendants' "trust fund" theory, prominently featured in the New York Actions, has been specifically held by this Court to involve property of the debtor's estate. In *In re O.P.M. Leasing Servs., Inc., supra*, this Court held:

> In New York, a transfer of corporate funds is fraudulent if made when the

*rights and powers of a trustee under the Code.*

corporation is insolvent or would thereby be rendered insolvent if the conveyance is made or the obligation is incurred without fair consideration. Also, corporate directors, officers and stockholders are accountable to creditors for the misappropriation of corporate funds, even in the context of loans. Thus, directors and officers may not pursue personal endeavors inconsistent with their duty of undivided loyalty to their corporations. *These officers and directors are fiduciaries to the corporation's stockholders and creditors, and, the right to recover for a breach of these duties passes to the trustee in bankruptcy.*

*Id.* 28 B.R. at 759 (citing *In re Happy Time Fashions, Inc.,* 7 B.R. 665 (Bankr.S.D.N.Y. 1980); emphasis added; additional citations omitted).

Additionally, Defendants' assertion that the New York Actions do not constitute an attempt on their part to control or obtain property of the estate because they are merely seeking money damages and not the return of the alleged fraudulently conveyed asset, is preposterous. As discussed herein, not only is the fraudulent conveyance cause of action property of the estate, but clearly any recovery, either in the form of a return of that particular asset to the estate or monetary damages, is also property of the estate.

> Because claims for damages from corporate mismanagement are derivative in nature ... such claims are enforceable solely by the trustee, and may not be asserted by any one creditor.

*Dana Molded Products Inc. v. Brodner,* 58 B.R. at 578; *see also, In re MortgageAmerica,* 714 F.2d at 1272.

Like the bank in *MortgageAmerica, supra,* the Defendants are impermissibly seeking to obtain property of the Debtor's estate based upon claims asserted under New York state's fraudulent conveyance laws. Under the well-settled rule of law, such causes of action constitute property of the Debtor's estate and, as mandated by *MortgageAmerica,* and its progeny, may be asserted under these circumstances only by the Debtor at this juncture in the case.

Accordingly, Defendants have violated § 362(a) of the Code. *See, In re Crysen/Montenay Energy Co. (Crysen/Montenay Energy Co. v. Esselen Assocs., Inc.),* 902 F.2d 1098, 1101 (2d Cir.1990).

*Whether The New York Actions Should Be Stayed Pursuant To Section 105 Of The Code.*

██ Pursuant to § 105(a) of the Code, "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "[T]he Bankruptcy Court has authority under § 105 broader than the automatic stay provisions of § 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings." *LTV Steel Co., Inc. v. Board of Education of the Cleveland City School District (In re Chateaugay Corp.),* 93 B.R. 26, 29 (S.D.N.Y.1988) (quoting *In re Baldwin–United Corp. Litig.,* 765 F.2d 343, 348 (2d Cir.1985)); *see also, In re Johns–Manville Corp.,* 91 B.R. 225, 227 (Bankr.S.D.N.Y.1988); *In re Chanticleer Associates, Ltd.,* 592 F.2d 70, 74 (2d Cir. 1979) ("The Court's power to preserve its jurisdiction by enjoining proceedings that would remove property from the bankrupt estate is fundamental to the scheme of the Bankruptcy Act").

> [T]he exceptions to the automatic stay of § 362(a) which are set forth in § 362(b) are simply exceptions to the stay which protect the estate automatically at the commencement of the case and are not limitations upon the jurisdiction of the bankruptcy court or upon its power to enjoin. That power is generally based upon section 105 of the Code. The court will have ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in a reorganization case.

2 *Collier on Bankruptcy,* ¶ 362.05 at 362–44 (15th ed.1988).

"The large majority of the courts which have considered the question have held that the bankruptcy courts have the power to restrain legal action by creditors of the debtor against non-debtor third parties, in

certain circumstances, pursuant to 11 U.S.C. § 105" *In re Monroe Well Service, Inc.*, 67 B.R. 746, 751 (Bankr.E.D.Pa.1986); *see also, In re Codfish Corp.*, 97 B.R. 132, 135 (Bankr.D.Puerto Rico 1988); *In re Johns–Manville Corp.*, 26 B.R. 420, 425 (Bankr.S.D.N.Y.1983), (Court under § 105 of the Code enjoined all litigation and discovery of the debtor's employees), *aff'd*, 40 B.R. 219 (S.D.N.Y.1984) (no need to decide whether § 362 of the Code automatically stays all discovery of employees since bankruptcy court can enjoin such discovery under § 105 of the Code), *rev'd in part*, 41 Bankr. 926 (S.D.N.Y.1984) (limited discovery from debtor's employees may be allowed where it is shown that the debtor retains sole custody of such discovery.); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir.); *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

"Since injunctions in bankruptcy cases are authorized by statute, the usual equitable grounds for relief, such as irreparable damage, need not be shown." *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y.1987); *see In re Chateaugay Corp.*, 93 B.R. at 29. "Instead, the bankruptcy court may 'enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it.'" *In re Johns–Manville Corp.*, 91 B.R. at 228 (quoting *In re Chateaugay Corp.*, 93 B.R. at 29); *see also, Continental Illinois National Bank v. Chicago*, 294 U.S. 648, 675, 55 S.Ct. 595, 605, 79 L.Ed. 1110 (1935) ("The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is, therefore, inherent in a Court of Bankruptcy, as it is in a duly established Court of Equity."); *A.H. Robins Co. v. Piccinin*, 788 F.2d at 1008.

Based upon the circumstances as presented, this Court finds that it is also appropriate to issue an injunction pursuant to § 105 of the Code to stay the New York Actions in order to preserve and protect the Debtor's estate and reorganization prospects. Not only may the outcome of the New York Actions affect the administration of this case, but the possibility of inconsistent judgments warrants the is-

suance of an injunction enjoining Defendants from further prosecution of the New York Actions. Even under the stricter standards of the Second Circuit for injunctive relief pursuant to Federal Rule 65, the Debtor has clearly met its burden.

The Debtor has demonstrated:

(A) irreparable harm; and

(B) either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the movant.

*Joseph Scott Co. v. Scott Swimming Pools, Inc.*, 764 F.2d 62, 66 (2d Cir.1985). *See e.g., New York Path. & X–Ray Lab., Inc. v. Immigration & Naturalization Serv.*, 523 F.2d 79, 81 (2d Cir.1975); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 (2d Cir.1985); *Abdul Wali v. Coughlin*, 754 F.2d 1015 (2d Cir.1985); *In re Ionosphere Clubs Inc.*, 108 B.R. 901, 947 (Bankr.S.D.N.Y.1989).

*Whether Section 362(h) Sanctions Are Warranted.*

Section 362(h) of the Code permits an individual injured by any willful violation of the automatic stay to "recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, ... punitive damages." 11 U.S.C. § 362(h). The appropriateness of imposing sanctions is a core matter within the meaning of 28 U.S.C. § 157(b)(1) and (2). *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir.1986); *In re Hooker Investments, Inc.*, 116 B.R. 375, 382 (Bankr. S.D.N.Y.1990). "Although not addressed by the court in *Crysen/Montenay, [supra,]* the word 'individual' has been construed by a number of courts to include corporate debtors". *Id.* (citing *Budget Service Co.*, 804 F.2d at 292; *Maritime Asbestosis Legal Clinic v. LTV Steel Company, Inc. (In re Chateaugay Corp.)*, 112 B.R. 526 (S.D. N.Y.1990); *In re Inslaw, Inc.*, 83 B.R. 89 (Bank.D.D.C.1988)).

In *Crysen/Montenay,* the [Second Circuit] announced a standard for all future cases under § 362(h) finding persuasive the reasoning adopted by other circuits. The court declared that 'any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h).' *Crysen/Montenay, supra* at 1105. The court declined to impose sanctions in that case as a result of what it termed the 'previously uncertain legal standard governing section 362(h).' *Id.* The court reasoned that '[the moving party] could not have known at the time it initiated its Eastern District action that it was subjecting itself to sanctions by not first seeking declaration from the bankruptcy court, having as it did a good faith belief that its action did not violate [the debtor's] automatic stay.' *Id.*

*In re Hooker Investments, Inc., supra,* 116 B.R. at 382–83. Since Defendants commenced the New York Actions prior to the Second Circuit's enunciation of its § 362(h) standards, the appropriate inquiry in this instance is whether the Defendants did not act in good faith in commencing the New York Actions. *Id.* at 383. *See also, Shimer v. Fugazy (In re Fugazy Express, Inc.),* 114 B.R. 865 (Bankr.S.D.N.Y.1990).

▪▪▪ This Court cannot envision a more compelling situation in which the imposition of sanctions would be warranted. At the time the New York Actions were commenced, it is beyond dispute that the Defendants had actual knowledge of the pendency of the Debtor's bankruptcy case. Indeed, Phelps was among the original putative creditors who filed the involuntary petition under chapter 7 against the Debtor and is currently a member of the Official Creditors' Committee. Defendants' disingenuous assertion that they acted on a good faith belief that the commencement of the New York Actions was not in violation of the stay because (1) no action was brought against the Debtor *per se,* but only

against its directors and management and (2) because the actions sought merely monetary damages and did not involve property of the estate are, as previously discussed, unsubstantiated by the well settled caselaw on the issues. Furthermore, the New York Actions seek recovery for the benefit of all creditors of the Debtor. It is absurd that Defendants set in motion the jurisdiction of the bankruptcy court with broad avoiding power availability, yet appear and act naive as to the implications of their actions. It cannot be stressed enough that Phelps, as counseled by Bader, is not an unsophisticated creditor who can claim lack of knowledge of the intricacies of bankruptcy law. Indeed, Bader has appeared before this Court on numerous occasions and has brought on various motions in the context of other bankruptcy proceedings. He is a fairly frequent practitioner in the bankruptcy courts. Moreover, Defendants not only brought about the event which triggered the imposition of the automatic stay provisions but actively participated in virtually every aspect of this bankruptcy proceeding. Finally, the Defendants elected to continue the prosecution of the New York State Actions notwithstanding the cautionary actual notice by the Debtor's Counsel that in his opinion those actions involved property of the estate and were violative of the automatic stay.

It cannot be disputed that there is sufficient evidence to establish that the Defendants by commencing and continuing to prosecute the New York Actions acted willfully and in bad faith. Consequently, pursuant to § 362(h) of the Code, this Court holds that the Defendants are hereby liable to the Debtor for actual damages incurred, including reasonable costs and attorney's fees, as a result of the commencement of the New York Actions.

*Whether Rule 11 Sanctions Are Appropriate.*

▪▪▪ In addition to requesting the assessment of § 362(h) damages against the Defendants for violating the automatic stay, Debtor also requests sanctions for the violation of Bankruptcy Rule 9011 or 28 U.S.C. § 1927 to compensate the Debtor for

its losses occasioned by Defendants' Motion[5].

Bankruptcy Rule 9011, which incorporates Federal Rule 11 states in pertinent part as follows:

> The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that *to the best of the attorney's or party's knowledge, information and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;* and that it is not interposed for any improper purpose, such as to harass, to cause delay, or in increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee. (Emphasis added).

*See e.g., Eastway Constr. Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452 (2d Cir.1988), *rev'd in part,* —— U.S. ——, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989); *International Shipping v. Hydra Offshore, Inc.,* 875 F.2d 388 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *In re Omega Trust,* 110 B.R. 665 (Bankr.S.D.N.Y.1990); *In re Cohoes Indus. Terminal, Inc.,* 103 B.R. 480 (Bankr.S.D.N.Y.1989).

"Bankruptcy Rule 9011 imposes affirmative duties on parties to investigate both as to the law and facts." *In re Omega Trust,* 110 B.R. at 672 (citing *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1508 (9th Cir.1987)); *Donaldson v. Clark,* 819 F.2d 1551, 1555–56 (11th Cir.1987); *Eastway Constr. Corp. v. City of New York,* 762 F.2d at 253). The Second Circuit has enunciated the following test to be used in determining whether Rule 11 violations have occurred:

> [T]he language of the new Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a *reasonable inquiry* into the viability of a pleading before it is signed.
>
> \*    \*    \*    \*    \*    \*
>
> [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where after *reasonable inquiry,* a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Const. Corp. v. City of New York,* 762 F.2d at 253–54 (emphasis added); *see also, In re Omega Trust,* 110 B.R. at 671–72.

This Court finds that the imposition of sanctions in this instance are warranted. A cursory review of a hornbook or treatise would have revealed that those portions of Defendants' Motion involving subject matter jurisdiction and lack of venue were neither "well grounded in fact" nor "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Indeed, Bader even admitted on the record that although it was his usual practice to consult *Moore's Federal Practice,* a treatise relied upon by the Debtor to establish the frivolity of the Defendants' position, he did not do so in this instance. Moreover, Bader decided to pursue the Defendants' Motion even after

---

**5.** The basis for imposition of sanctions pursuant to 28 U.S.C. § 1927 as distinct from Bankruptcy Rule 9011 is that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct". While such conduct may have occurred, there is not sufficient evidence in the record developed thus far to determine that sanctions under 28 U.S.C. § 1927 are applicable.

he had been advised by this Court during a discovery and scheduling chambers conference held pursuant to Local rule 13(k) and Federal Rule 16, that the position taken in his motion that subject matter jurisdiction vanished because the New Jersey Court venued the case to this district pursuant to 28 U.S.C. § 1412 was lacking in merit and that the parties should move on to more compelling matters raised in this Adversary Proceeding complaint. Without buttressing his original motion papers or responding to the Debtor's answering papers and briefs, Bader pressed the full measure of the motion. Therefore, the imposition of sanctions in this instance, should be of little surprise to Counsel.

However, it is important to note that, as stated by Judge Blackshear:

It is not this Court's intention to 'stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.' But, when it is so patently clear, as it is in this case, that the claims of the [movant] are completely lacking in merit an imposition of sanctions will not result in any 'chilling' effect on creative lawyering.

*In re Omega Trust*, 110 B.R. at 672 (citation omitted).

"Once the court finds that Rule 11 has been violated, the court has no choice but to impose appropriate sanctions." *Id.* at 673. Consequently, the Debtor is entitled to compensation for its reasonable costs and attorneys' fees from Defendant Bader as sanctions for his violation of Bankruptcy Rule 9011 and Federal Rule 11.

### CONCLUSION

Defendants' Motion for, *inter alia*, dismissal and summary judgment is hereby denied. In contrast, summary judgment is hereby granted in favor of the Debtor. Specifically, this Court finds (1) that the Defendants commencement and continued prosecution of the New York Actions are violative of the automatic stay under § 362 of the Code and, accordingly are void; (2) that pursuant to §§ 362 and 105 of the Code, the Defendants are enjoined and restrained from taking any action of any kind in further prosecution of the New York Actions, and from commencing any other such action affecting, or seeking to affect, directly or indirectly, property of or from the Debtor, or property of the estate and/or affecting in any manner the administration of the bankruptcy estate; (3) that pursuant to § 362(h) of the Code, the Debtor is entitled to recover from the Defendants its reasonable costs and attorney's fees incurred as a result of and in connection with Defendants commencement and continued prosecution of the New York Actions; and (4) that pursuant to Bankruptcy Rule 9011, Federal Rule 11 the Debtor is hereby entitled to an award of its reasonable costs and attorney's fees incurred in having to respond to the Defendants' Motion.

The Debtor is hereby directed to submit an affidavit detailing its actual and necessary expenses, the appropriateness of which shall be determined at a subsequent hearing.

Submit an Order in accordance with the foregoing.